UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------
BELLA RABINOWITZ
on behalf of herself and
all other similarly situated consumers

                            Plaintiff,

        -against-


EXPERIAN INFORMATION SOLUTIONS, INC.

                            Defendant.

----------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1. Plaintiff Bella Rabinowitz seeks redress for the illegal practices of Experian Information Solutions, Inc. in violation of the Fair Credit Reporting Act (FCRA).

### *Parties*

2. Plaintiff is a citizen of the State of New York who resides within this District.

3. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

4. Upon information and belief, Defendant's principal place of business is located in Costa Mesa, California.

5. Defendant is a "Consumer Reporting Agency" (CRA) as defined by 15 U.S.C. 1681a(f) et. seq.

### *Jurisdiction and Venue*

6. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7. All conditions precedent to the bringing of this action have been performed.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Bella Rabinowitz*

9. Plaintiff is a consumer who is the victim of inaccurate reporting by Defendant Experian Information Solutions, Inc., and has suffered particularized and concrete harm.

10. Plaintiff Bella Rabinowitz disputed Bank of America and Americredit/GM Financial accounts that appeared on her credit report directly with Experian Information Solutions, Inc. on or about November 6, 2019.

11. Thereafter, Experian Information Solutions, Inc. notified the Plaintiff that it had initiated an investigation into the said dispute.

12. Experian Information Solutions, Inc.'s investigation did not resolve the dispute and Plaintiff subsequently filed a statement of dispute with Experian Information Solutions, Inc. on or about November 25, 2019.

13. Section 1681i(c) of the FCRA provides: "Whenever a statement of a dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

14. Plaintiff obtained her consumer credit report from Experian Information Solutions, Inc. on or about December 28, 2019 and found that the Defendant had not included Plaintiff's statement of dispute in the credit report.

15. 15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

16. Section 1681i(a) outlines the reinvestigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

17. Section 1681i(b), in turn, permits the consumer to file a "statement of dispute" with the CRA in the event that the reinvestigation fails to resolve the dispute.

18. Finally, Section 1681i(c) requires any consumer report produced subsequent to the filing of the statement of dispute to clearly note the dispute "and provide either the consumer's statement or a clear and accurate codification or summary thereof."

19. Subsequent to Experian Information Solutions, Inc.'s receipt of the Plaintiff's statement of dispute, Experian Information Solutions, Inc. issued consumer reports without in any way indicating to the users of the reports that certain information contained therein was disputed by Plaintiff and failed to include a copy of Plaintiff's statement of dispute.

20. Experian Information Solutions, Inc. intentionally failed to include the statement of dispute with later copies of the Plaintiff's consumer reports.

21. Plaintiff's November 25, 2019 "Statement of Dispute" letter, sent in response to Defendant's reinvestigation results constitutes a "statement of dispute" under 15 U.S.C. § 1681i(b).

22. The "Statement of Dispute" letter was sent after Plaintiff's request for a reinvestigation yielded no change in the status of the account on Plaintiff's credit report. This is precisely the process that § 1681i requires.

23. Plaintiff clearly provided sufficient detail in her November 25, 2019 "Statement of Dispute" letter to put the Defendant on notice as to the nature of the dispute.

24. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate,

relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

25. Defendant violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified the Defendant of the said dispute.

26. The Defendant's subsequent reinvestigation of the item failed to resolve the dispute so the Plaintiff filed a statement of dispute with Experian and Experian failed to include the statement of dispute with later copies of the Plaintiff's consumer report.[1]

27. Inaccurate information was included in the Plaintiff's credit report.

28. The inaccuracy was due to the Defendant's failure to follow reasonable procedures to assure maximum possible accuracy.[2]

---

[1] Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010) ("Trans Union's failure to properly reinvestigate *Dixon-Rollins's* dispute was not an isolated incident. Indeed, it has repeatedly failed to carry out its statutory duty despite the rejection of the same argument it now repeats and admonishments that its reinvestigations were deficient. In 1997, the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information. *Cushman*, 115 F.3d at 225**. Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation**, *see e.g., Krajewski*, 557 F. Supp. 2d at 616; *Crane*, 282 F. Supp. 2d at 320; *Lawrence*, 296 F. Supp. 2d at 589; *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083 (D. Or. 2007) (**Trans Union must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.*, No 05-5468, 2007 U.S. Dist. LEXIS 33119, 2007 WL 1309542, at *2 (W.D. Wash. May 4, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. *See, e.g., Mullins v. Equifax Info. Servs., LLC*, No. 05-888, 2007 U.S. Dist. LEXIS 62912, 2007 WL 2471080, at *7 n. 11 (E.D. Va. Aug. 27, 2007). Thus, **because Trans Union has been warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc., v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 232 (3d Cir. 2005) (recidivist behavior relates to defendant's conduct as to non-parties).") (emphasis added)

[2] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source— which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

29. The Plaintiff suffered injury.

30. The consumer's injury was caused by the inclusion of the inaccurate entry.

31. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees, who were acting within the scope and course of its employment, and under the direct supervision and control of the Defendant herein.

32. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

33. Discovery of the violations brought forth herein began and occurred in the month of November, 2019 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

## CLASS ACTION ALLEGATIONS

34. When a consumer notifies Experian that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" Experian must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, Experian must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

35. If a consumer disputes an account that appears on his or her credit, Experian must investigate to determine whether the account pertains to that consumer and should be part

of that consumer's credit history. As part of the investigation, Experian must notify the source of the disputed account about the consumer's dispute and provide the source with all the relevant information provided by the consumer. Alternatively, Experian can delete the derogatory information.

36. Experian has long been aware of its obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

37. The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like Experian violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

38. Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir.

1982); <u>Dennis v. BEH-1, LLC</u>, 520 F.3d 1067 (9th Cir. 2008); <u>Steed v. Equifax Info. Serv's, LLC</u>, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

39. Experian's failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

40. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Experian's failure to comply with 15 U.S.C. § 1681i(a)(1) and 1681i(a)(2).

41. This cause of action is brought on behalf of Plaintiff and the members of a class.

42. The class consists of all persons whom Defendant's records reflect resided in the State of New York, who notified Experian of a dispute of an account appearing in their Experian credit files and to whom Experian Information Solutions, Inc. sent a letter to the Plaintiff, during the period beginning two years prior to the filing of this action and through the time of judgment.

43. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Experian, Experian has represented that it receives approximately 10,000 disputes a day, amounting to millions of disputes each year. Accordingly, Plaintiff estimates that each class has thousands of members.

44. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Experian violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

45. Plaintiff's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Experian regarding a

dispute, which Experian did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiff received results of her disputes from Experian with standard form language. Plaintiff's claim is typical of the two-year class because she made her dispute within two years.

46. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor her counsel has any interests that might cause them not to vigorously pursue these claims.

47. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Experian's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Experian, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's practices.  Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

48. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible

standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## AS AND FOR A FIRST CAUSE OF ACTION
*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

49. At all times mentioned in this Complaint, Bank of America and Americredit/GM Financial were Furnishers of information as referred to in 15 U.S.C. 1681s-2 of the FCRA.

50. At all times mentioned in this Complaint, Bank of America and Americredit/GM Financial were federally registered trademarks representing the furnisher for a disputed account which is the subject of this action.

51. Prior to the commencement of this action, Plaintiff disputed certain information about respective Bank of America and Americredit/GM Financial accounts on Plaintiff's Experian consumer credit report.

52. The Defendant subsequently notified the Plaintiff that it would investigate the said dispute.

53. Experian's investigation did not resolve the dispute and Plaintiff subsequently filed a statement of dispute.

54. The disputed account appeared on Plaintiff's Experian consumer report and in her file maintained by Experian, yet did not include the said statement of dispute.

55. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on

computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

56. Defendant's investigation process did not live up to the standards of <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

57. Defendant's investigation process did not live up to the standards of the Federal Trade Commission in the matter of <u>U.S. v. Performance Capital Mgmt.</u> (Bankr. C.D. Cal. Aug. 24, 2000).

58. Defendant violated the duty under 15 U.S.C. 1681i by verifying the above referenced account without obtaining any documentation in support of its contention that Defendant was legally responsible for the account.

## **LIABILITY AND DAMAGES**

59. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

60. At all times mentioned in this Complaint, various employees and/or agents of Defendant were acting as agents of Defendant and therefore Defendant is liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

61. At all times mentioned in this Complaint, employees and/or agents of Defendant were acting jointly and in concert with Defendant, and Defendant is liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendant and its agents or employees were engaged in a common business venture and were acting jointly and in concert.

62. Plaintiff believes and asserts that she is entitled to $1,000.00 in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

63. Plaintiff believes and asserts that Defendant's actions were willful and intentional.

64. Because Defendant's acts and omissions were done willfully, Plaintiff requests punitive damages.

65. Plaintiff requests punitive damages against Defendant in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

66. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

67. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

68. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION
*(New York Fair Credit Reporting Act)*

69. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

70. Experian Information Solutions, Inc. failed to delete information found to be inaccurate, reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

71. Experian Information Solutions, Inc. failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of its investigation, its decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

72. Experian Information Solutions, Inc. failed to clearly note in all subsequent consumer reports that the account in question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

73. As a result of the above violations of the N.Y. FCRA, Experian is liable to the Plaintiff for actual damages, punitive damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in her favor and against the Defendant and award damages as follows:

   a) Statutory damages provided under the N.Y. FCRA;

   b) Attorney fees, litigation expenses and costs incurred in bringing this action; and

   c) Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
January 27, 2020

/s/ Adam J. Fishbein
Adam J. Fishbein, P.C. (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

/s/ Adam J. Fishbein
Adam J. Fishbein (AF-9508)